# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| JMAC Energy Services, LLC, | ) |
| | ) |
| Plaintiff/Counter-Defendant, | ) |
| | ) |
| | ) **ORDER DENYING DEFENDANT** |
| vs. | ) **ATHABASCA MINERALS, INC.'S** |
| | ) **MOTION FOR A PRELIMINARY** |
| Badger Mining Corporation and | ) **INJUNCTION** |
| Athabasca Minerals, Inc., | ) |
| | ) |
| Defendants/Counter-Plaintiffs/Third-Party Plaintiff, | ) Case No. 1:24-cv-080 |
| | ) |
| vs. | ) |
| | ) |
| Jon McCreary and Todd Erickson | ) |
| | ) |
| Third-Party Defendants. | ) |

Before the Court is Defendant/Counter-Plaintiff/Third-Party Plaintiff Athabasca Minerals, Inc.'s motion for preliminary injunction filed on July 3, 2024. See Doc. No. 16. The Plaintiff/Counter Defendant JMAC Energy Services, LLC, ("JMAC") filed a response in opposition to the motion on July 11, 2024. See Doc. No. 22. Athabasca filed a reply brief on July 18, 2024. See Doc. No. 27. JMAC filed a supplement on August 1, 2024. See Doc. No. 29. Athabasca filed a supplement on August 8, 2024. See Doc. No. 32. For the reasons outlined below, the motion is denied.

I.     **BACKGROUND**

The Plaintiff, JMAC, is a Delaware limited liability company with its principal office address in Wenatchee, Washington. JMAC's lone member is Jon McCreary, a resident and citizen of Washington. JMAC's operational center and the location of the majority of its business is in North Dakota supporting oil companies operating in the Bakken oil fields. Athabasca is a corporation organized under the laws of the Province of Alberta and with its principal office address located in Calgary, Alberta.

JMAC and Athabasca formed AMI Silica, LLC ("AMI Silica") in 2021, a North Dakota limited liability company in the silica sand (frac sand) supply business. JMAC and Athabasca were AMI Silica's sole members, each owning 50% of the company. JMAC and Athabasca executed an Operating Agreement dated July 19, 2021. See Doc. No. 15-1. The Operating Agreement was amended on February 16, 2022. See Doc. No. 15-1, p. 38. JMAC filed this action on May 13, 2024, to "prevent Badger and Athabasca from exercising management rights they do no have" in AMI Silica. See Doc. No. 1, ¶ 1. The Court dismissed Badger Mining Corporation for lack of jurisdiction on December 12, 2024. See Doc. No. 41.

Under the Operating Agreement, JMAC and Athabasca shared equally in the governance of AMI Silica, each holding 50% of the Voting Membership Units in AMI Silica and each entitled to elect two of the four members of the board of governors. JMAC and Athabasca also agreed to limit the transferability of their membership units in AMI Silica and the rights associated with those units. With respect to the transfer of membership units, JMAC and Athabasca agreed that a non-selling party would have a right of first refusal ("ROFR") to purchase the other member's interest in the event one member sought to sell its membership interest. See Doc. No. 15-1, ¶ 11.02. The

Operating Agreement contains a choice of law provision which provides that North Dakota law shall govern. See Doc. No. 15-1, ¶ 14.03.

Among the terms included in the February 2022 Operating Agreement Amendment was a Most Favored Buyer Pricing provision, which gave JMAC the right to purchase up to 50,000 tons of sand per month from AMI Silica at the price equal to that paid by the lowest paying AMI Silica customer at the time. See Doc. No. 15-1, p. 38. Also included in the Amendment was a Rail car Preference clause which gives JMAC the right to use AMI Silica rail cars for shipping up to 50,000 tons of frac sand to North Dakota per month. See Doc. No. 15-1, p. 38.

In the Fall of 2022, Athabasca began experiencing significant financial difficulties that continued into 2023. In early 2023, Athabasca explored the possibility of going to market for sale. Shortly thereafter, Athabasca eventually disposed of nearly all of its Canadian assets, while retaining all Canadian liabilities. Athabasca filed a Notice of Intention to Make a Proposal to its Creditors in Canada due to the ongoing financial difficulties it was facing. In Canada, a Notice of Intention to Make a Proposal to Creditors is a process under Canadian Bankruptcy law which provides for a stay and is the first step financially troubled Canadian companies use to restructure. Athabasca established a court-supervised process to sell Athabasca's stock at auction. On February 9, 2024, Athabasca conducted an auction. Badger and JMAC participated in that auction. Badger is a competitor of AMI Silica. Badger made the winning bid in the amount of $29.2 million. JMAC subsequently confirmed in writing that it intended to assert its ROFR. Athabasca refused to honor JMAC's ROFR. On April 24, 2024, Badger closed its transaction with Athabasca. In the wake of the sale of Athabasca to Badger, JMAC and Athabasca are at odds over Athabasca's membership interests in AMI Silica.

On February 27, 2024, JMAC commenced legal proceedings against AMI Silica in the United States District Court for the District of North Dakota seeking various relief including a preliminary injunction to prevent the companies from proceeding with the transaction. See JMAC Energy Services LLC, v. Athabasca Minerals Inc., No. 1:24-cv-037 (D.N.D. filed Feb. 27 2024). On February 29, 2024, JMAC filed a cross-application with the Alberta Court seeking declaratory relief that the ROFR applied to the transaction. To settle the above-mentioned claims, JMAC and Athabasca entered into a settlement agreement that withdrew JMAC's claim to an injunction based on the ROFR.

In the present case, JMAC seeks, among other things, to prevent Badger and Athabasca from participating in the management of AMI Silica contrary to Section 11.03(a) of the Operating Agreement which requires unanimous consent for any transfer of membership interests, and from interfering with JMAC's rights under the Most Favored Buyer Pricing provision (Section 14.16) in the Amendment to the Operating Agreement. The Most Favored Buyer Pricing provision in the Amendment to the Operating Agreement which permits JMAC to purchase 50,000 tons of sand per month from AMI Silica at the lowest price available to any AMI Silica customer. Athabasca maintains the Most Favored Buyer Pricing provision is unenforceable.

A dispute has also arisen over the participation of JMAC and/or AMI Silica in Transload Service Agreement (the "TSA") with Buffalo Rail & Infrastructure Corp. ("Buffalo Rail"). Athabasca has moved for a preliminary injunction prohibiting JMAC from entering into the TSA or causing AMI Silica to enter the TSA without the consent of all of AMI Silica's members. JMAC maintains Buffalo Rail is not interested in working with AMI Silica and it has no interest in forcing AMI Silica to participate in the TSA without the consent of its members. JMAC also points out that

Buffalo Rail intends to contract with JMAC Resources, Inc. ("JRI") not JMAC itself. JMAC further asserts that it intends to enter the TSA irrespective of the its right to purchase 50,000 tons of frac sand at Most Favored Buyer Pricing and that even if it were not to enter into the TSA, it intends to buy and resell the 50,000 tons of sand it has the right to buy under Section 14.16 of the Operating Agreement.

## II. LEGAL DISCUSSION

### A. PRELIMINARY INJUNCTION

Athabasca seeks a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure. The primary purpose of a preliminary injunction is to preserve the status quo until a court can grant full, effective relief upon a final hearing. Ferry-Morse Seed Co. v. Food Corn, Inc., 729 F.2d 589, 593 (8th Cir. 1984). A preliminary injunction is an extraordinary remedy, with the burden of establishing the necessity of a preliminary injunction placed on the movant. Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003); Baker Elec. Coop., Inc. v. Chaske, 28 F.3d 1466, 1472 (8th Cir. 1994); Modern Computer Sys., Inc. v. Modern Banking Sys., Inc., 871 F.2d 734, 737 (8th Cir. 1989). The court determines whether the movant has met its burden of proof by weighing the factors set forth in *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 114 (8th Cir. 1981).

The *Dataphase* factors include: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." Id. "No single factor in itself is dispositive; in each case all of the factors must be considered to determine whether on balance they weigh towards granting the injunction." Baker Elec. Coop., Inc.,

28 F.3d at 1472 (quoting Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc., 815 F.2d 500, 503 (8th Cir. 1987)); see also CDI Energy Servs., Inc. v. W. River Pumps, Inc., 567 F.3d 398, 401-03 (8th Cir. 2009).

### 1. PROBABILITY OF SUCCESS ON THE MERITS

When evaluating a movant's likelihood of success on the merits, the court should "flexibly weigh the case's particular circumstances to determine 'whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined.'" Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc., 815 F.2d 500, 503 (8th Cir. 1987). At this stage, the Court need not decide whether the party seeking the preliminary injunction will ultimately prevail. PCTV Gold, Inc. v. SpeedNet, LLC, 508 F.3d 1137, 1143 (8th Cir. 2007). Although a temporary restraining order or a preliminary injunction cannot be issued if the movant has no chance on the merits, "the Eighth Circuit has rejected a requirement as to a 'party seeking preliminary relief prove a greater than fifty per cent likelihood that he will prevail on the merits.'" Id. The Eighth Circuit has also held that of the four factors to be considered by the district court in considering preliminary injunctive relief, the likelihood of success on the merits is "most significant." S & M Constructors, Inc. v. Foley Co., 959 F.2d 97, 98 (8th Cir. 1992). A likelihood of success on the merits of even one claim can be sufficient to satisfy the "likelihood of success" Dataphase factor. See Nokota Horse Conservancy, Inc. v. Bernhardt, 666 F. Supp. 2d 1073, 1078-80 (D.N.D. 2009).

The burden of establishing the necessity of a preliminary injunction is on the movant. Baker Elec. Coop., Inc. v. Chaske, 28 F.3d 1466, 1472 (8th Cir. 1994); Modern Computer Sys., Inc. v. Modern Banking Sys., Inc., 871 F.2d 734, 737 (8th Cir. 1989), *superseded on other grounds by*

*statute as recognized in* Com. Prop. Invs., Inc. v. Quality Inns Int'l Inc., 938 F.2d 870, 874 (8th Cir. 1991). No single factor in itself is dispositive and all factors must be considered to determine whether they weigh towards granting an injunction. Baker Elec. Coop., 28 F.3d at 1472 (quoting Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc., 815 F.2d 500, 503 (8th Cir. 1987)). The court in *Dataphase* noted that "the absence of a finding of irreparable injury is alone sufficient ground for [denying] the preliminary injunction." Dataphase, 640 F.2d at 114 n.9.

The Court must consider Athabasca's substantive claims in determining whether it has a likelihood of success on the merits. Athabasca's claims and the premise of this motion invite, and indeed require, the Court to declare that several provisions of the Operating Agreement are invalid and unenforceable. Since it is not at all clear that such is the case, the Court is not willing to make such a declaration at this early stage of the proceedings and based upon a record that is far from complete. The briefing reveals multiple factual disputes and dueling affidavits. See Doc. Nos. 18, 19, 23, 29-2, and 29-3. The Court agrees with JMAC that AMI Silica's lack of interest in the Buffalo Rail TSA and lack of objection to JMAC's participation in the project renders the request for a preliminary injunction largely moot. See Doc. No. 29-2, pp. 4-7. In addition, the Court cannot enjoin non-parties.

The parties are sophisticated entities involved in the oil and gas business. The Court will not prejudge the merits and it is far from clear how the factfinder will interpret the contract and decide the case. North Dakota law does not favor the invalidation of contract provisions entered into as part of an arms length transaction. Mag Const. Co. v. McLean Cnty., 181 N.W.2d 718, 721 (N.D. 1970) (noting "courts do not favor the destruction of contracts because of uncertainty, but will, if feasible, construe agreements so as to carry into effect the reasonable intention of the parties, if that can be

7

determined"). The Court finds this *Dataphase* factor weighs against the grant of a preliminary injunction.

### 2. IRREPARABLE HARM

Athabasca must establish there is a threat of irreparable harm if injunctive relief is not granted, and that such harm is not compensable by an award of money damages. Doe v. LaDue, 514 F. Supp. 2d 1131, 1135 (D. Minn. 2007). "The 'mere possibility' that harm may occur before a trial on the merits is not enough." MKB Mgmt. Corp. v. Burdick, 954 F. Supp. 2d 900, 912 (D.N.D. 2013). The party that seeks a preliminary injunction must show that a significant risk of harm exists. Id. The absence of such a showing is sufficient grounds to deny injunctive relief. Id. Thus, "the threat of irreparable harm" is a threshold inquiry. Gelco Corp. v. Coniston Partners, 811 F.2d 414, 418 (8th Cir. 1987) (noting that "[t]he failure to show irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction"). "Recoverable monetary loss may constitute irreparable harm only where the loss threatens the very existence of the [plaintiff]'s business." Packard Elevator v. I.C.C., 782 F.2d 112, 115 (8th Cir. 1986).

Athabasca has failed to demonstrate why money damages are not the proper remedy in this case. While damage calculations are often difficult, fact finders are often called upon to make such determinations. The grant of a preliminary injunction in this case may work great harm against those restrained and make the determination of damages all the more difficult. Whatever the merits of the case may turn out to be, money damages are the appropriate remedy and the grant of a preliminary injunction would only make the damages calculation more difficult. The Court concludes this factor weighs against the issuance of a temporary restraining order.

### 3.      BALANCE OF HARM

The balance of harm factor requires consideration of the balance between the harm to the movant and the injury the injunction's issuance would inflict on other interested parties. See Pottgen v. Mo. State High Sch. Activities Ass'n, 40 F.3d 926, 929 (8th Cir. 1994). While the irreparable harm factor focuses on the harm or potential harm to the plaintiff, the balance of harm factor examines the harm to all parties to the dispute and other interested parties, including the public. See Dataphase, 640 F.2d at 114; Glenwood Bridge, Inc. v. City of Minneapolis, 940 F.2d 367, 372 (8th Cir. 1991). At this stage of the case it is very difficult to determine which party will be harmed more by the grant or denial of a preliminary injunction because it is not at all clear who will ultimately prevail on the merits. JMAC maintains it will be greatly harmed by an injunction. Much of the harm Athabasca fears has been negated by the decision of AMI Silica not to pursue the TSA opportunity. The Court concludes this factor is neutral.

### 4.      PUBLIC INTEREST

The public has an interest in enforcing contractual obligations. Sleep Number Corp. v. Young, 33 F.4th 1012, 1019 (8th Cir. 2022) (citing Med. Shoppe Int'l., Inc. v. S.B.S. Pill Dr., Inc., 336 F.3d 801, 805 (8th Cir. 2003) ("[W]e agree that the public interest would not be served by permitting a party to avoid contractual obligations.")). But it is not at all clear, at least at this early stage of the case, that JMAC is violating any contractual duties.

North Dakota law expressly states that it is "in the public interest to foster, to encourage, and to promote the development, production, and utilization of natural resources of oil and gas in the state . . . ." N.D.C.C. § 38-08-01. The Court fails to see how an injunction prohibiting JMAC from participating in the TSA furthers the public interest when AMI Silica has disclaimed any interest in

the opportunity. There is a strong public interest in upholding contractual agreements and in unrestrained competition. Life Time Fitness, Inc. v. DeCelles, 854 F. Supp. 2d 690, 696 (D. Minn. 2012). The Court concludes this *Dataphase* factor weighs against an injunction.

### III.   CONCLUSION

After carefully reviewing the entire record, the Court finds that Athabasca has failed to sustain its burden of proof and the stringent burden of establishing the necessity of a preliminary injunction at this early stage of the litigation. The *Dataphase* factors, when viewed in their totality, do not weigh in favor of the issuance of a preliminary injunction. On balance, the Court finds that the equities weigh in favor of not granting the extraordinary remedy of a preliminary injunction at this time. There are adequate remedies at law available to the prevailing party to address any harm shown to be caused by the conduct of the other parties. More important, it is well-established that a preliminary injunction is considered to be an extraordinary remedy and the need for such a remedy must be clearly established by the movant. The evidence in the record before the Court does not support the issuance of such a drastic remedy. The motion for a preliminary injunction (Doc. No.16) is **DENIED**..

**IT IS SO ORDERED.**

Dated this 19th day of February, 2025.

                                        */s/  Daniel L. Hovland*
                                        Daniel L. Hovland, District Judge
                                        United States District Court